The bill in this case was filed by the complainant, a taxpayer, against the township of North Bergen, the county of Hudson, the New Jersey Junction Railroad Company and The New York Central Railroad Company presumably for the purpose of quieting title to certain lands claimed by the complainant. The bill deals with a tract of land in the township of North Bergen along the Hudson river and is described as Plot 4-AB in Block 438-C. The bill prays that the township and county be restrained from enforcing a tax sale and the apportionment of said land, on the ground that the apportionment and tax assessments are fraudulent, ultravires, illegal and void. Complainant owned land adjacent to the Hudson river in said township as well as a strip of ripa lands. Bordering on the ripa lands is a highway known as the Hoboken and Hudson River Turnpike. West of the turnpike and about parallel thereto are located the tracks and right-of-way of the New Jersey Junction Railroad Company, which railroad is operated by The New York Central Railroad Company, as lessee.
The county of Hudson made certain improvements to the turnpike and in this connection eliminated two railroad grade crossings. This required certain changes in the alignment of the highway and thereby increased the amount of complainant's lands. However, it encroached upon complainant's ripa lands.
As a result of these changes certain conveyances were made between the parties in accordance with an agreement entered into between the complainant and the railroad companies. The township was not a party to this agreement. The county engineer of Hudson had some informal arrangement with Mr. Stefferson, counsel and secretary of the complainant. They worked out a plan satisfactory to both. Under this plan the county was to reimburse the complainant its costs of acquiring from the State of New Jersey a new strip of land along its ripa lands which was to be eventually taken over as part of the railroad bed as relocated. The county was to assume payment of taxes due on that portion of the old ripa lands which were to be transferred to the railroad company. *Page 564 
The lands effected by these proceedings were then described on the tax records of the township as "Lot 4-A, in Block 438-C."
On July 5th, 1933, the board of commissioners of the township adopted a resolution to apportion the tax liens for the years 1930 to 1933, inclusive, against the land in question. By this resolution the former plot was described as "Lot 4-AA, in Block 438-C" and as "Lot 4-AB, in Block 438-C." It does not appear, however, that the tax map of the municipality was changed to show the outlines and dimensions of these new apportionments. Mr. Stefferson, however, who carried on the negotiations for the complainant was notified by the county engineer of Hudson county in December, 1933, that the apportionment had been made. He also told Mr. Stefferson that complainant would not be required to pay taxes on the property transferred, as such taxes would be paid by the county.
The conveyances above referred to were made in March and April, 1934. Complainant received three separate sets of tax bills covering the lands in question and other properties belonging to complainant for the years 1930 to 1933, inclusive. The first set of bills covered Lot 4-AA and Lot 4-AB, in Block 438-C. Another set of bills which were receipted contained assessments on Lot 4-AA in Block 438-C covering the years 1930 to 1932, inclusive, and the first half of 1933. The bill for the second half of 1933 for said lot was canceled by resolution of the township. A third set of bills for the year 1933 against Lot 4-AB, in Block 438-C was submitted to the complainant and bore a rubber stamp as follows: "Apportioned by Resolution Board of Commissioners, Jul. 5-1933, Corrected Bill."
Mr. Stefferson submitted at least some of these bills to the attorneys for the railroad company. He testified that he paid no particular attention to the assessment covering Lot 4-AA although he admitted that he did not understand them and made some effort to ascertain what properties they covered. Subsequently he turned over all these bills to the treasurer of the complainant. Mr. Stefferson made no inquiry of the tax assessor as to what property was covered by Lot 4-AB *Page 565 
which was assessed for $496,000, the tax on which was $26,000 per year. A letter, telephone call or personal call on the tax assessor would have immediately disclosed what property was included in Lot 4-AB. Nothing was done by complainant until April, 1936, when the matter was placed in the hands of Kelsey and Ludwig of Jersey City in connection with some matters of tax on personal property. In the meantime the township had sold the property at tax sale on September 12th, 1935, for non-payment of taxes. The property at the tax sale was bid in by the township.
In March, 1937, the complainant here, applied to the chief-justice for a writ of certiorari to review the apportionment on the ground that it was unfair. The application was denied. An application for the writ was renewed before the supreme court and again denied as far as the assessment, tax and apportionment of the lot in question is concerned. SeeLuckenbach Terminals, Inc., v. Township of North Bergen,118 N.J. Law 348.
The bill of complaint which was filed September 13th, 1937, alleges unfair apportionment, unconstitutionality of the act, chapter 121, P.L. 1919, under which the apportionment was made, and fraud on the part of the municipality. The proper method to attack the apportionment is by certiorari. It is well settled in this state that the review of such proceedings by a municipal body, is by certiorari, in the absence of special equities or acts ultra vires. The supreme court refused the writ to review the matters of assessment, tax and apportionment. This court is now asked to determine those same questions. The bill evidently was intended to give this court jurisdiction by the insertion of paragraph 40 1/2 as the other allegations of the bill appear to set up matters which had been argued before the supreme court.
I find nothing in the evidence which establishes a so-called corrupt design on the part of the municipality or the county. The supreme court on the same facts expressed the view that the complainant was in grave laches. As above stated, the supreme court is the proper tribunal to review the proceedings which it has already refused to do. That being so, this court cannot now in the absence of proof of special equities review *Page 566 
them. Even if this court could review such procedure, it seems to me, as was apparent to the supreme court, the complainant is in laches. The inquiry relative to the assessment was not pursued with diligence. Courts are loathe to interfere with the collection of public revenues. In order that this court may interfere, a party must bring his case strictly within the bounds of equity jurisprudence. Such party must promptly seek his remedy. Complainant's failure to prove fraud or "corrupt design" and its laches in seeking relief compels a dismissal of the bill. This being so it is not necessary to pass upon the constitutionality of the act. *Page 567